UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM SIAS,

        Plaintiff,

                                                Case No. 20-cv-0447-bhl

v.

METALCRAFT OF MAYVILLE INC,

        Defendant.

## SUMMARY JUDGMENT ORDER

        This case is like a Tribble.[1] It began as a single, straightforward, FLSA action for failure to pay overtime wages. In short order, however, it spawned into more than two dozen largely identical cases in which individual employees brought the same claims against the same employer. Even worse, the new cases were not designated as related and were therefore assigned to different judges, ultimately appearing on the dockets of nearly every judge in this district. The effects of this multiplication have been ameliorated, at least in part. Some of the cases ended on their own, by voluntary dismissal. At the Court's direction, the rest were reassigned to a single judge in an effort to preserve some modicum of judicial resources. And, on June 3, 2021, the Court sua sponte ordered the consolidation of all the cases for purposes of discovery. In hopes that exemplar rulings might help resolve the entire batch, the Court also allowed each side to pick two cases to test on summary judgment.

        Currently pending are four motions for summary judgment—two filed by Plaintiffs and two by Defendant. All four cases demonstrate a shared fundamental flaw. While Plaintiffs claim that their employer, Metalcraft, improperly denied them overtime pay, they are unable to show the amount and extent of the work they claim to have performed as a matter of "just and reasonable inference." Instead, Plaintiffs can muster only unreliable speculation and guesswork, which are insufficient, as a matter of law, to prove damages. As a result, all four motions will be resolved in Defendant's favor. The Court will also require counsel for Plaintiffs to file in each of the remaining

---

[1] *Star Trek: The Trouble with Tribbles* (NBC television broadcast Dec. 29, 1967).

cases a statement identifying any particular facts or legal arguments that might warrant a different result. If such differences exist, the Court will schedule further proceedings for the resolution of those cases. If not, the Court will enter summary judgment for Defendant in those cases too.

## PROCEDURAL HISTORY

In late 2017, Plaintiff Richard Mazurek filed this case, seeking to certify a collective action of Metalcraft employees denied overtime pay under the Fair Labor Standards Act, 29 U.S.C. §216(b). (17-1439 ECF No. 1.) In early 2018, Magistrate Judge William E. Duffin conditionally certified a FLSA class or collective based on stipulation between the parties. (17-1439 ECF No. 16.) After discovery and the identification of a handful of putative class members, Mazurek moved to decertify the class. (17-1439 ECF No. 55.) Judge Duffin granted this motion on April 30, 2020. (17-1439 ECF No. 63.) Subsequently, Mazurek's counsel filed 24 related cases on behalf of the putative collective members who were dismissed from the original case upon decertification. On June 3, 2021, the Court consolidated the cases for purposes of discovery and granted counsel for each side leave to file up to two motions for summary judgment in cases of their choosing. (17-1439 ECF No. 88.)

On July 24, 2021, Defendant filed a motion for summary judgment in both 17-1439, *Mazurek v. Metalcraft of Mayville, Inc.*, and 20-0452, *Lamberg v. Metalcraft of Mayville, Inc.* On August 27, 2021, Plaintiff moved for summary judgment in 20-0441, *Webster v. Metalcraft of Mayville, Inc.*, and 20-0447, *Sias v. Metalcraft of Mayville, Inc.* All four motions are now fully briefed and ripe for decision.

## FACTUAL BACKGROUND[2]

Metalcraft is a company that employs hourly workers to engage in metal fabrication, welding, painting, and assembly line work. (17-1439 ECF No. 96 at 1.) For a portion of the period between 2008 and 2019, Richard Mazurek, Casey Lamberg, Gordon Webster, and William Sias (Plaintiffs) each worked at a Wisconsin Metalcraft plant. (17-1439 ECF No. 96 at 6; 20-0452 ECF No. 41 at 6; 20-0441 ECF No. 44 at 3; and 20-0447 ECF No. 47 at 1.)

During Mazurek's, Lamberg's, and Webster's employment, Metalcraft used a timekeeping system called SEE-IT. (17-1439 ECF No. 96 at 3; 20-0452 ECF No. 41 at 3; 20-0441 ECF No.

---
[2] These facts are taken from the parties' proposed statements of facts. (17-1439 ECF Nos. 96 & 97; 20-0452 ECF Nos. 41 & 42; 20-0441 ECF Nos. 40 & 44; and 20-0447 ECF Nos. 43 & 47.) Disputed facts are viewed in the light most favorable to the nonmoving party.

40 at 5.) During Sias' tenure, Metalcraft used both SEE-IT and another system called Kronos. (20-0447 ECF No. 43 at 5.) SEE-IT collected employees' work time via a "Clock-In" and "Clock-Out" function and transmitted the work time for each employee to payroll. (17-1439 ECF No. 96 at 3.) Kronos functioned similarly. (*See* 20-0447 ECF No. 43 at 5-8.)

At all relevant times, Metalcraft had a longstanding policy permitting employees to punch in up to 15 minutes before their scheduled start times and punch out up to 15 minutes after their scheduled end times, referred to as the "Grace Period." (17-1439 ECF No. 96 at 3.) If an employee punched in during this "Grace Period" but did not engage in work, Metalcraft adjusted the employee's "Clock-In" time to their scheduled start time. (*Id.* at 4.) Plaintiffs allege that they performed compensable work during the "Grace Period," but Metalcraft adjusted their "Clock-In" times to the scheduled start time anyway, so they received no corresponding overtime pay. (17-1439 ECF No. 1 at 4-6; 20-0452 ECF No. 1 at 3-6; 20-0441 ECF No. 1 at 3-6; and 20-0447 ECF No. 1 at 3-6.)

Richard Mazurek worked as a CNC Machinist for Metalcraft at its West Bend plant from November 24, 2008 to April 30, 2017. (17-1439 ECF No. 96 at 6-7.) Between October 20, 2014 and August 30, 2017—the relevant statutory interval—he worked 132 weeks, or 599 days. (*Id.* at 6.) During this period, Metalcraft paid Mazurek $13,139.99 in overtime. (*Id.* at 7.) Mazurek testified that he normally punched in approximately 14 minutes before his scheduled start time, though he also testified that his actual punch-in times varied. (*Id.* at 9.) On a damages spreadsheet prepared with the assistance of counsel, he claims a uniform 14 minutes of unpaid pre-shift activity every day. (17-1439 ECF No. 99-19.) Despite this claim, he admitted in deposition that he was not sure how many minutes he actually worked prior to any given shift. (17-1439 ECF No. 96 at 9.) Although he estimated that he did between 1 and 15 minutes of pre-shift work every day, he admitted this was guesswork. (17-1439 ECF No. 92-1 at 69:15-71:24.) He also could not remember an instance where he worked overtime and was not properly compensated, and he stated that nothing could trigger his memory. (*Id.* at 75:11-23.) And he did not know if the pre-shift work for which he received overtime pay was included in his damages calculations. (*See id.* at 62:8-20.) Additionally, he testified to using at least some of the "Grace Period" for unquestionably noncompensable personal activities such as socializing with coworkers (*Id.* at 46:7-21.), going to the bathroom (*Id.* at 46:22-47:16.), and collecting aluminum cans. (*Id.* at 51:5-52:1.)

Casey Lamberg performed welding and assembly line work for Metalcraft at its West Bend plant from January 26, 2014 to August 10, 2016. (20-0452 ECF No. 41 at 6-7.) Between March 14, 2015 and August 10, 2016—the relevant statutory interval—he worked 73 weeks. (*Id.* at 6.) During this period, Metalcraft paid Lamberg $1,889.93 in overtime. (*Id.* at 6-7.) In his interrogatory responses, Lamberg stated that he punched in every day approximately 10 minutes before his shift start time and arrived at his workstation and began working "within a minute or two." (*Id.* at 9.) In his deposition, Lamberg conceded that, at times, he used up to 10 minutes of the "Grace Period" for personal activities, including spending at least 5 minutes on his cellphone every day. (*Id.*) Nevertheless, on his damages spreadsheet, Lamberg claims a uniform 10 minutes of unpaid pre-shift activity every day. (20-0452 ECF No. 43-15.) Like Mazurek, Lamberg did not know if the pre-shift work for which he received overtime pay was included in his damages calculations. (20-0452 ECF No. 41 at 8.) Lamberg also admitted that, because he biked to work each day, his actual punch-in time varied based on the weather. (*Id.* at 9.) Additionally, he testified that his work routine was not based on actual memory, and the routine itself could vary wildly from day to day. (20-0452 ECF No. 36-1 at 48:25-52:17.)

Gordon Webster ran a robotic brake press for Metalcraft at its West Bend plant from February 20, 2017 until September 7, 2017. (20-0441 ECF No. 44 at 3, 5.) During that period, Metalcraft paid Webster $847.79 in overtime. (*Id.*) Webster testified that he punched in 14 to 15 minutes before his shift every day. (*Id.* at 4.) On his damages spreadsheet, he claims a uniform 14 minutes of unpaid pre-shift activity every day. (20-0441 ECF No. 50-1.) But Webster also admitted to arriving later and even being tardy on some days due to road conditions and his daughter's needs. (20-0441 ECF No. 44 at 2-3.) As with Mazurek and Lamberg, Webster stated that he did not know if the pre-shift work for which he received overtime pay was included in his damages estimations. (*Id.* at 4.) He also testified that he did not have a memory as to what he did each day, and he could not think of any triggering factors or events that would help him recall work he performed for which he was not paid. (*Id.* at 6.) Additionally, he stated that his claim was based on his daily routine, but he had no memory of that routine, and he acknowledged that it could vary. (*Id.* at 2-3.)

William Sias worked as a robotic welder for Metalcraft at its Mayville plant from February 14, 2014 to February 26, 2019. (20-0447 ECF No. 47 at 1.) Between March 12, 2017 and February 26, 2019—the relevant statutory interval—Metalcraft paid Sias $24,576.81 in overtime. (*Id.* at

10.)  Sias stated that his arrival time could vary because of weather or construction.  (*Id.* at 2.)  Nevertheless, on his damages spreadsheet prepared with the assistance of counsel he claims a uniform 14 minutes of unpaid pre-shift activity every day.  (20-0447 ECF No. 53-1.)  As with Mazurek, Lamberg, and Webster, Sias stated that he did not know if the pre-shift work for which he received overtime pay was included in his damages estimations.  (20-0447 ECF No. 47 at 3.)  He testified that his alleged pre-shift routine was not based on his memory because "When I got to work, I don't remember the work I did on the day-to-day basis."  (*Id.* at 2.)  Sias also testified that nothing could trigger his memory so that he could recall instances where he did not receive pay for overtime work.  (*Id.* at 4.)

## SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate where the admissible evidence reveals no genuine issue of any material fact."  *Sweatt v. Union Pac. R. Co.*, 796 F.3d 701, 707 (7th Cir. 2015) (citing Fed. R. Civ. P. 56(c)).  Material facts are those under the applicable substantive law that "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of "material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  If the parties assert different views of the facts, the Court must view the record in the light most favorable to the nonmoving party.  *E.E.O.C. v. Sears, Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000).  But the nonmoving party "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported only by speculation or conjecture.'"  *Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (quoting *Nichols v. Michigan City Plant Plan. Dep't*, 755 F.3d 594, 599 (7th Cir. 2014)).

## ANALYSIS

Plaintiffs allege violations of both the Fair Labor Standards Act and Wisconsin's Wage Payment and Collection Laws stemming from Defendant's failure to pay overtime.  Under the FLSA, an employee seeking unpaid overtime compensation has the burden of proving (1) that "he performed work for which he was not properly compensated," *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded by statute*, 29 U.S.C. §254(a); (2) the amount and extent of that work, *id.* at 687-88; and (3) that the "employer [knew] or [had] reason to believe that he [was] continuing to work."  29 C.F.R. §785.11.  The same burden applies to Wisconsin Wage Payment and Collection Laws claims.  *Shivalec v. Milwaukee Mixed Metal Cycles LLC*, 2018 WL 6813926, at *5 (E.D. Wis 2018).  None of the plaintiffs in the four instant cases has come forward

with admissible evidence sufficient to allow a jury to find, as a matter of just and reasonable inference, the amount and extent of the compensable pre-shift work Plaintiffs claim to have performed. To the contrary, all four plaintiffs admit they have no concrete proof beyond their own guesswork and speculation. Accordingly, all four summary judgment motions must be resolved in Defendant's favor.[3]

### I. Plaintiffs Are Unable to Satisfy Even the Limited Burden of Showing the Amount and Extent of Their Work As a Matter of "Just and Reasonable Inference."

It is neither uncommon nor surprising for FLSA plaintiffs to be unable to prove with precision the amount and extent of their unpaid work. Accordingly, unless the employer's records provide a means of proof, the law gives employees a reduced burden. As the Supreme Court explained, "where the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes" the employee can carry his FLSA burden "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson*, 328 U.S. at 687. Here, Defendant's timekeeping systems rounded to the scheduled shift start and end times when employees punched in during the 15-minute "Grace Period." Therefore, the timekeeping records do not provide an accurate representation of the time employees spent performing compensable work. Under such circumstances, the law does not punish "the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." *Id.* Rather, the employee is given the opportunity to prove the amount and extent of their work as a matter of just and reasonable inference, even if their calculations lack the precision of a computerized timekeeping system. *Id.* But while employees' calculations need not hit the bullseye, they must at least land somewhere on the proverbial dart board.

### II. Plaintiffs' Contradictory, Speculative Guesswork Is Insufficient to Prove the Amount and Extent of Work They Performed As a Matter of Just and Reasonable Inference.

---

[3] In *Webster*, 20-0441, and *Sias*, 20-0447, Defendant did not move for summary judgment. The Court may grant summary judgment for a nonmovant as long as the movant had notice and a reasonable time to respond. Fed. R. Civ. P. 56(f)(1). Normally, "saying that one party is not entitled to summary judgment is not to say that its opponent necessarily *is*." *Hotel 71 Mezz Lender LLC v. Nat'l Retirement Fund*, 778 F.3d 593, 602 (7th Cir. 2015) (emphasis in original). But in this case, the Court's June 3, 2021 order in *Mazurek*, 17-1439, put all parties on notice of the Court's intention to test the viability of a slew of related cases via four motions for summary judgment. (17-1439 ECF No. 88.) Further, both parties had the opportunity to present arguments opposing summary judgment in two nearly identical cases. Under the circumstances, the Court is confident that all parties had the opportunity to marshal all the favorable evidence in support of their arguments. *See Jones v. Union Pac. R. Co.*, 302 F.3d 735, 740 (7th Cir. 2002). Webster and Sias had the opportunity to submit their best evidence to support denial of summary judgment for Defendant. The evidence was simply insufficient.

Employees can only recover wages for hours they can prove they actually worked. *Weil v. Metal Techs, Inc.*, 925 F.3d 352, 358, n.5 (7th Cir. 2019). When there is a discrepancy between the employee's alleged work hours and the employer's records, the employee must tender some evidence to substantiate his version of events. Unreported work time can be "reconstructed from memory, inferred from the particulars of the job[] . . . , or estimated in other ways—any method that enables the trier of fact to draw a 'just and reasonable inference' concerning the amount of time the employee had worked would suffice." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 775 (7th Cir. 2013). This is a lenient standard. It recognizes the employee's inherent epistemic disadvantages, but it is not an open invitation to guess or invent working hours post hoc. Indeed, a survey of relevant Seventh Circuit caselaw confirms that internally inconsistent testimony and speculative guesswork will not suffice. *See Bum Hoon Lee v. BK Schaumburg Inc.*, No. 18-CV-3593, 2020 WL 3577994, at *5 (N.D. Ill. July 1, 2020) ("An employee's own vague, inconsistent, or speculative testimony is insufficient to establish . . . a 'just and reasonable inference' as to how many overtime hours the employee worked.").

In *Brown v. Family Dollar Store of IN, LP*, 534 F.3d 593 (7th Cir. 2008), the Seventh Circuit held that hours worked could be proven through "triggering factors." *Id.* at 597-98. The plaintiff presented evidence that she opened and closed the store where she worked, that it took her 1-2 hours to do so, and that the store was open for extended holiday hours from Thanksgiving to Christmas. *Id.* These extended holiday hours sufficed as "triggering factors" that signaled the true scope of her worktime during that period. *Id.* This was sufficient as an evidentiary matter for plaintiff to proceed with her claim.

In *Urnikis-Negro v. American Family Property Serv*, 616 F.3d 665 (7th Cir. 2010), an employer failed to record the plaintiff's work hours because it believed she was a salaried employee exempt from FLSA overtime provisions. *Id.* at 669. Based on the plaintiff's testimony that she arrived at work at about 8:15 a.m. after dropping her children at school, and, considering the evidence of the large volume of business the defendant handled during the relevant time period, the court determined that the plaintiff had adequately shown she averaged between 10 and 12 hours of work a day, five days a week. *Id.* at 669. Notably, the defendant did not dispute that the plaintiff worked more than 40 hours per week, nor did it argue that she spent pre-shift time performing noncompensable activities. *Id.*

In *Melton v. Tippecanoe Cnty.*, 838 F.3d 814 (7th Cir. 2016), a plaintiff blindly sought compensation for every single day's lunch—which he claimed to have worked through—even though company records indicated that he had been compensated for that time on certain occasions. *Id.* at 817, 820. The court determined that no reasonable person would believe the plaintiff's story because it was directly contradicted by undisputed time records. *Id.* at 820. Accordingly, the court of appeals concluded the plaintiff had not shown the amount and extent of hours worked as a matter of just and reasonable inference. *Id.* at 819-20 ("[R]elying on recollection does not mean the plaintiff may survive summary judgment where his recollection 'is flatly refuted' by other evidence in the record . . . or his story is so 'internally inconsistent or implausible on its face' that 'no reasonable person would believe it. . . . At the very least, an employee relying on his own recollection to prove a violation of FLSA must have a reasonably reliable story[.]" (quoting *Seshadri v. Kasraian*, 130 F.3d 798, 802 (7th Cir. 1997))).

Similarly, in *Turner v. The Saloon, Ltd.*, 595 F.3d 679 (7th Cir. 2010), the Seventh Circuit held a plaintiff had not shown the amount and extent of his work as a matter of just and reasonable inference. *Id.* at 690-91. The plaintiff claimed that he worked multiple Sundays from 2003 to 2004 and was instructed to alter his time records to prevent overtime accrual. *Id.* However, his employer produced evidence showing the employee had only worked Sundays four times, and, on two of those times, was paid overtime. *Id.* On the other two occasions, his total hours worked for the week were so low that there would be no need to shave his Sunday worktime to keep him below the overtime threshold. *Id.* Thus, "[a]lthough [the plaintiff] dispute[d] the accuracy of [the employer's] records, his mere assertions [were] insufficient to create a jury issue." *Id.* at 691.

Finally, in *Brand v. Comcast Corp.*, 135 F. Supp. 3d 713 (N.D. Ill. 2015), a district court recognized that plaintiffs seeking to establish hours worked for purposes of a FLSA claim may rely on recollection but not speculation and therefore granted summary judgment to the defendant. *Id.* at 742. "The language [Plaintiffs] use about how often they 'maybe' or 'probably' worked through lunch suggests guesswork. They point to no explanations as to how they reached their estimates, nor do they point to any memory 'triggering factors' or other details providing the basis for their recollection." *Id.* "'Bare allegations and vague undocumented estimates' are insufficient to survive summary judgment." *Id.* (quoting *Millington v. Morrow Cty. Bd. of Comm'rs*, No. 2:06-CV-347, 2007 WL 2908817, at *7 (S.D. Ohio 2007)).

### A. Plaintiffs' Allegations are Speculative, and Speculative Allegations Cannot Survive Summary Judgment.

The four cases presented in the pending motions are more like the *Turner-Melton-Brand* line than *Brown* or *Urnikis-Negro*. All four plaintiffs admit that their reconstructed worktime represents guesswork. (17-1439 ECF No. 91 at 5; 20-0452 ECF No. 35 at 3; 20-0441 ECF No. 43 at 4; and 20-0447 ECF No. 46 at 5.) Mazurek acknowledged that he "couldn't even guess" how often he worked more than eight hours a day. (17-1439 ECF No. 92-1 at 30:7-13.) Lamberg agreed that he could not remember what work he did before his scheduled start time. (20-0452 ECF No. 36-1 at 47:11-21.) Webster stated, "[t]here ain't really no memory involved" in his FLSA claim. (20-0441 ECF No. 37-2 at 109:25-110:6.) And Sias repeatedly testified that he had no memory of what he did when he got to work. (20-0447 ECF No. 39-1 at 54:11-21, 55:2-9, 55:18-24.)

Each plaintiff also ruled out the possibility of "triggering factors," like those that helped substantiate the plaintiff's allegations in *Brown*. (17-1439 ECF No. 91 at 10; 20-0452 ECF No. 35 at 8-9; 20-0441 ECF No. 43 at 17; and 20-0447 ECF No. 46 at 17.) Mazurek said nothing could trigger his recollection. (17-1439 ECF No. 92-1 at 75:11-23.) Lamberg agreed that there was no event or anything else that would trigger his memory so he could recall if he worked before his start time or after his end time and was not paid. (20-0452 ECF No. 36-1 at 34:9-15.) Webster identified a single event that triggered his memory of working late, but he also admitted that he was paid for the work in that instance. (20-0441 ECF No. 37-2 at 33:25-34:4, 34:9-20.) Sias stated that nothing could trigger his memory of when he worked overtime and was not paid. (20-0447 ECF No. 39-1 at 35:10-14.)

With no access to memories and no prospect of recovering them, Plaintiffs can offer nothing more than "bare allegations." *See Brand*, 135 F. Supp. 3d at 742. To the extent that those bare allegations establish disputes of material fact, the disputes are improperly based on speculation. *See Hurrle v. Reconstructive Hand to Shoulder of Indiana LLC*, No. 115CV00685RLYTAB, 2017 WL 264537, at *5 (S.D. Ind. Jan. 20, 2017). This is exactly what spelled doom for the plaintiffs in *Turner* and *Brand*, and it is similarly fatal to Plaintiffs here.

### B. Plaintiffs' Allegations Are Internally Inconsistent, and Internally Inconsistent Allegations Cannot Survive Summary Judgment.

Even if Plaintiffs claimed to possess dependable memories of their time at Metalcraft, their contradictory narratives would belie those claims. Each claimant has provided a spreadsheet purporting to summarize their damages. But, unlike the reliable testimony of the plaintiffs in *Brown* and *Urnikis-Negro*, Plaintiffs' stories are uniquely, advantageously malleable, colored by outright contradictions, and subject to change at their convenience. As the court in *Melton* recognized, this is contrary to basic rules of evidence and such internally inconsistent allegations are insufficient to save a claim from summary judgment. *See Melton*, 838 F.3d at 819.

Mazurek's damages spreadsheet uniformly seeks compensation for 14 minutes of daily overtime work for the duration of the statutory period. (17-1439 ECF No. 99-19.) At the same time, he testified that he cleaned up, clocked out, and went home 5 minutes before his shift's scheduled end time every day. (17-1439 ECF No. 99-1 at 93:6-22.) And he stated that he normally punched in about 14 minutes early, but he also acknowledged that he sometimes arrived later, and he sometimes used the "Grace Period" for noncompensable, personal activities. (17-1439 ECF No. 96 at 9-10.) Additionally, Defendant's books show that Mazurek *was in fact* paid overtime for 161 of the 599 days his spreadsheet claimed went unpaid. (17-1439 ECF No. 91 at 15.) And Mazurek does not know if his estimates account for the overtime he has already been paid. (*See* 17-1439 ECF No. 92-1 at 62:8-20.) Somewhere in this jumble, there are a handful of facts that might support a FLSA action, but no reasonable person could find that Mazurek's naked attempt to extract and weaponize—from a morass of contradictory allegations—only those facts useful to his cause established the amount and extent of work he performed as a matter of just and reasonable inference. To the contrary, his inconsistent testimony requires the Court to grant Defendant's motion.

Lamberg's damages spreadsheet uniformly seeks compensation for 10 minutes of daily overtime work for the duration of the statutory period. (20-0452 ECF No. 43-15.) But his deposition testimony directly contradicts this. (*See* 20-0452 ECF No. 43-2 at 57:7-9, 93:23-94:17, 83:2-7.) And his interrogatory responses contradict both the spreadsheet and the deposition. (*See* ECF No. 36-7 at 2.) Were this just a set of opening allegations attached to a complaint, Lamberg's adjustments and deviations could be forgiven, but, at summary judgment, he must at least have a "reasonably reliable story." *See Melton*, 838 F.3d at 819. He does not.

Webster's damages spreadsheet uniformly seeks compensation for 14 minutes of daily overtime work for the duration of the statutory period. (20-0441 ECF No. 50-1.) He claimed he could make such an accurate estimate because his daily routine was "automatic." (*See* 20-0441 ECF No. 37-2 at 109:25-110:6.) However, he also acknowledged that he punched in around his start time and even late on certain days. (*Id.* at 27:13-18, 39:21-22, 76:21-77:1, 77:6-9.) And he did not perform uncompensated work after his scheduled end time. (*Id.* at 38:15-39:6.) Additionally, he *was* paid overtime for 33 of the 136 days his spreadsheet claimed went unpaid (*See id.* at 66:21-68:24.), but he is uncertain if his estimate accounts for those payments. (20-0441 ECF No. 44 at 4.) Webster also admitted that he could not remember an instance where he worked overtime and did not receive commensurate compensation. (*Id.* at 2.) An account this rife with inconsistencies cannot establish a genuine dispute of material fact at summary judgment. *See Melton*, 838 F.3d at 819.

Sias' damages spreadsheet uniformly seeks compensation for 14 minutes of daily overtime work for the duration of the statutory period. (20-0447 ECF No. 53-1.) But Sias testified that, while Defendant used the SEE-IT timekeeping system, he punched in 15 minutes early every day, and while Defendant used the Kronos timekeeping system, he punched in 11 minutes early every day. (20-0447 ECF No. 43 at 9.) Furthermore, he acknowledged that not all of his pre-shift time was spent performing compensable activities. (*See* 20-0447 ECF No. 47 at 4.) Plus, he *was* paid overtime for 33 of the 298 days he later claimed went unpaid (*Id.* at 21), but like his fellow plaintiffs, he does not know if he accounted for these payments in his damages estimates. (*Id.* at 3.) Again, a story this unreliable cannot survive summary judgment. *See Melton*, 838 F.3d at 819.

In short, none of the four plaintiffs in this case has produced evidence to support their claims or even a coherent narrative worth crediting at summary judgment. As a result, they cannot prevail.[4]

---

[4] The Court also notes that, even if any Plaintiff managed to prove the amount and extent of work they performed as a matter of just and reasonable inference, they have not established that the work they allege to have performed was compensable notwithstanding the Portal-to-Portal Act, 29 U.S.C. §254(a) and the de minimis exception recognized in, e.g., *Frank v. Wilson & Co.*, 172 F.2d 712, 715-16 (7th Cir. 1949).

### III. Plaintiffs May Not Rely on Punch Records to Establish Their Claims Because Punch Records Do Not Reflect Time Worked.

29 C.F.R. §785.48(a), entitled "Differences between clock records and actual hours worked," states that:

> Time clocks are not required. In those cases where time clocks are used, employees who voluntarily come in before their regular starting time or remain after their closing time, do not have to be paid for such periods provided, of course, that they do not engage in any work. Their early or late clock punching may be disregarded.

Accordingly, FLSA plaintiffs seeking overtime must "provide evidence that [they] were actually *working* without compensation—not simply that they were clocked in for over 40 hours." *Weil*, 925 F.3d at 357 (emphasis in original).

Plaintiffs all testified that access to Metalcraft's punch records would trigger their recollection of when they punched in and out on a particular day. (*See* 17-1439 ECF No. 92-1 at 115:11-15; 20-0452 ECF No. 36-1 at 121:2-11; 20-0441 ECF No. 37-2 at 108:9-14; 20-0447 ECF No. 39-1 at 106:20-107:20.) One would certainly hope so. But Plaintiffs' claims do not fail because they are unable to precisely recall their *punch times* unprompted. They fail because Plaintiffs are unable to establish the amount and extent of *their uncompensated work* as a matter of just and reasonable inference. On this issue, punch records are immaterial; they do not establish time worked. *See Anderson*, 328 U.S. at 690. Had Plaintiffs provided reliable evidence of the work they performed immediately after "Clock-In," the punch records would aid the Court in estimating the extent of unpaid overtime. But throughout these cases, each Plaintiff has alleged a general pre-shift work routine and then proceeded to undermine it with caveats, carveouts, and admissions of forgetfulness. Knowing the exact minute Plaintiffs punched in on a nondescript Friday in April is certainly a testament to the meticulousness of modern technology, but it does nothing to remedy the inconsistent guesswork as to what happened subsequent to those punch-ins. It is that inconsistent guesswork that stifles Plaintiffs' claims.

## CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff Sias' Motion for Summary Judgment under Fed. R. Civ. P. 56 (20-0447 ECF No. 38) is **DENIED**, summary judgment is **GRANTED** for nonmoving Defendant under Fed. R. Civ. P. 56(f)(1), and the case is **DISMISSED**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on December 16, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
